**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| WILLIAM BUCK, #R21689, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25-cv-01945-SMY |
| | ) | |
| LT. LIVINGSTON, SGT. NAVARETTE,[1] | ) | |
| C/O KIRKWOOD, LT. BURLEY, | ) | |
| SGT. WILSON, SGT. JOHNSON, | ) | |
| C/O BRITTON, C/O MASSEY, | ) | |
| C/O NEWKIRK, GONZALEZ, | ) | |
| CASTELLENOS, C/O WALL, | ) | |
| SGT. BOWKER, LT. KELSEY, | ) | |
| C/O BALLARD, C/O WHITE, | ) | |
| CNA HOOVER, NURSE RUHOLL, | ) | |
| NURSE BROWN, NURSE ELLISON, | ) | |
| JOHN DOES #1-4 (Tact Team Members), | ) | |
| RYAN NOTHNAGLE, | ) | |
| LATOYA HUGHES, and | ) | |
| CARMARILLO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**YANDLE, Chief Judge:**

Plaintiff William Buck, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Joliet Treatment Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights during his incarceration at Lawrence Correctional Center. He claims he was subjected to excessive force, retaliation, unconstitutional conditions, and denied treatment for his serious medical needs (Doc. 1). He seeks monetary damages. *Id.*

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C.

---

[1] This defendant's name is misspelled on the docket sheet (See Doc. 1, p. 2). The Clerk will be directed to correct the error.

§ 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed.  28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1):  Plaintiff was housed in the health care infirmary at Lawrence starting in July 2024 (Doc. 1, p. 9).[2]  Because of his medical conditions, Plaintiff is bedridden and requires medical assistance including a Hoyer lift to be put in his wheelchair, to be picked up off the floor, to bathe, and to change his diaper.  All defendants were aware of Plaintiff's medical needs.  Plaintiff filed grievances against all named defendants complaining of mistreatment and the conditions of his confinement, which prompted them to retaliate by attacking him and refusing medical assistance (Doc. 1, p. 10).

On September 11, 2024, Plaintiff fell out of bed onto the concrete floor while Defendants C/O Britton, Nurses Brown and Ellison, and Hoover (CNA) watched (Doc. 1, p. 11).  These defendants refused to help him or put him into his wheelchair and refused to change his diaper that was full of feces.  Instead, they left Plaintiff to lie on the floor in pain in the soiled diaper and removed the bedframe from his cell.  Plaintiff yelled for help and heard Britton, Brown, Ellison, and Hoover say nobody should help him, while they watched him on the video monitor.  Dr. Weisman arrived and ordered staff to clean Plaintiff, return the bedframe, and lift Plaintiff off the floor into his wheelchair (Doc. 1, p. 12).

After lunch on September 24, 2024, Plaintiff again ended up on the floor with his diaper full of feces and urine.  Hoover and Nurse Ruholl refused to help him, and he yelled for assistance

---

[2] Plaintiff was transferred to Joliet Treatment Center in January 2026 (Docs. 13, 14).

(Doc. 1, p. 12).  Tact members C/O Massey and C/O Newkirk, another unknown Tact officer (John Doe #1, a white male helping Massey on September 24, 2024), and Lt. Burley told Plaintiff to shut up or they would give him something to yell about.  Ruholl returned and said Plaintiff would not get any help because they knew about his complaints against them and other staff.  Plaintiff heard Burley, Britton, Ruholl, and Hoover "plotting and conspiring to assault Plaintiff and file false paperwork to cover it up" (Doc. 1, p. 12).  Soon after, John Doe #1 entered Plaintiff's cell and pointed a pepper spray can at Plaintiff's face while another Tact Team officer grabbed his arms and handcuffed him in back.  The cuffing caused pain in Plaintiff's elbow and arms (Doc. 1, pp. 12-13).  They rolled Plaintiff face down into the urine on the floor then lifted him by his arms, inflicting more pain.  His ankles were shackled.  Britton stood outside the cell trying to block the camera view.  Burley, Ruholl, and Hoover were in the cell during these events and instructed the others on how to move Plaintiff.  Plaintiff's diaper was removed.  Someone spread his buttocks and wiped his anal area and scrotum with an object that felt like it contained pepper spray, inflicting extreme pain.  One of the Tact members slapped Plaintiff's buttocks and said it would be worse next time.

Plaintiff was sent to an outside hospital for his injuries.  Before he left, Plaintiff was interviewed by Defendants Gonzalez and Castellenos (Internal Affairs).  He told them the incident was recorded on camera (Doc. 1, p. 14).  The next day, Newkirk and Britton came to Plaintiff's cell and made sexual comments about what they did to Plaintiff, intending to intimidate him.  Gonzalez and Castellenos returned to Plaintiff's cell with Massey.  Plaintiff told them Massey was one of the attackers.  Gonzalez and Castellanos replied they knew this.  Gonzalez and Castellanos put Plaintiff's fingers in ink, then put his fingerprints on some papers Plaintiff was not allowed to read.  Later, Massey told Plaintiff those documents would clear him, and threatened Plaintiff (Doc.

3

1, p. 14).

On September 30, 2024, Plaintiff was lying on a mattress on the floor in his cell when Burley, Britton, Sgt. Wilson, Hoover, and Ellison entered (Doc. 1, p. 15).  Britton handcuffed and shackled Plaintiff.  Hoover, Ellison, and Wilson walked through urine on the floor, then walked onto Plaintiff's mattress.  Wilson placed his foot onto Plaintiff's genitals with his full weight, inflicting severe pain.  A doctor ordered Plaintiff sent to an outside hospital.  C/O White (Tact Team) accompanied Plaintiff and threatened him about filing complaints and grievances on Lawrence staff.  At the hospital, White threw Plaintiff from the bed to the floor while he was handcuffed and shackled.  Plaintiff remained on the floor in pain for hours until officers returned him to Lawrence.

On October 15, 2024, Lt. Burley, Sgt. Johnson, and C/O Wall came to Plaintiff's cell after he yelled for help (Doc. 1, p 15).  Burley grabbed Plaintiff by the throat and held a can of pepper spray in his face while Johnson struck Plaintiff.  Plaintiff was in his wheelchair, pushed to the far side of the cell out of camera view.  They left and Plaintiff yelled for help.  From around noon to 12:30pm, Brown, Hoover, Wall, and John Doe #2, #3, and #4 (Tact Team members described as white males working with Nurse Brown on October 15, 2024) twice refused medical treatment and left without changing Plaintiff's diaper. They threatened Plaintiff with more pain if he kept asking for help.  He was forced to sit in a diaper filled with feces for hours until the second shift (Doc. 1, p. 16).

Similar events occurred during October 2024.  Nurses Ruholl and Hoover refused to give Plaintiff water or empty his overflowed urinal on October 16, 2024.  Ruholl reminded Plaintiff the last time he yelled for help he "got something in his ass." *Id.*  On October 24, 2024, Hoover and Burley refused to help Plaintiff into his wheelchair or give him water and left him lying in a feces-

filled diaper for hours.  Hoover again refused to help Plaintiff into his wheelchair on October 25, 2024.

Plaintiff was on suicide watch from November 2024 into December 2024.  He requested a crisis team member around 1:15pm on December 23, 2024 while he was on C-ward (Doc. 1, pp. 16-17).  Sgt. Navarrete told Plaintiff to shut up, kicked his wheelchair, and grabbed his right wrist, twisting it backward to apply handcuffs.  C/O Kirkwood grabbed Plaintiff's left wrist and cuffed his hands behind his back, knowing this would cause severe pain. Plaintiff started falling off his wheelchair.  Kirkwood and Navarette held Plaintiff's cuffed hands in the air, slammed him back into the wheelchair and shackled his legs.  Carmarillo (BHT) watched the incident without intervening.  Kirkwood told Plaintiff they would "show him how they do N***s who complain about staff."  Kirkwood and Navarette put another set of shackles on the handcuffs and attached them to the bathroom door so Plaintiff was hanging by his arms above his wheelchair in excruciating pain.  When they removed the shackles from the door, they slammed Plaintiff back in the wheelchair and pulled the shackles underneath the wheelchair, causing him to yell in pain (Doc. 1, p. 18).

Navarette called Lt. Livingston, Lt. Kelsey, C/O White, and C/O Ballard, who brought a "strap" wheelchair.  Livingston bent Plaintiff's left thumb as they slammed him into the strap wheelchair and strapped him in.  Livingston said they had a "good surprise" for him in 5-house. They took him to 5-B #3 where Livingston and the others struck Plaintiff in his groin, stomach, back, and head.  They slammed him onto the bed, removed his clothes and diaper, and an object was put into his anus.  Livingston, Kelsey, Ballard, White, and Sgt. Bowker left.  Someone threw a smock covered with mace onto Plaintiff and threw a second mattress onto the floor.

On second shift, Plaintiff fell onto the floor and was lying in his own feces.  He reported

the assault to a nurse, who called for help.  Castellenos responded and was upset because Plaintiff filed another complaint (Doc. 1, p. 19).  She interviewed Plaintiff in earshot of other inmates to embarrass him.  Plaintiff was taken to an outside hospital.

When he returned to the prison on December 24, 2024, he was placed back in the infirmary, where Kirkwood asked him if he was "back for more?"  *Id.*  Livingston and Hoover refused to use the Hoyer lift to transfer Plaintiff, instead slamming him onto the cell bed, inflicting pain.  They removed Plaintiff's clothes while Livingston threatened him with more harm.

Each of the named defendants knew Plaintiff made many verbal and written complaints, grievances, letters, and calls regarding his mistreatment at Lawrence, and retaliated against him for doing so (Doc. 1, pp. 20-21).  Plaintiff also raises claims of civil conspiracy, official misconduct, and assault and battery (Doc. 1, pp. 21-24).

 Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1: Eighth Amendment deliberate indifference to serious medical needs claim against Britton, Brown, Ellison, and Hoover for refusing to help Plaintiff off the floor or change his diaper on September 11, 2024.

Count 2: Eighth Amendment claim against Britton, Brown, Ellison, and Hoover for subjecting Plaintiff to unconstitutional conditions of confinement for allowing him to lie on the floor in a diaper full of feces on September 11, 2024.

Count 3: Eighth Amendment deliberate indifference to serious medical needs claim against Hoover, Ruholl, Massey, Newkirk, Burley, and John Doe #1 for refusing to help Plaintiff up from the floor or change his diaper on September 24, 2024.

Count 4: Eighth Amendment claim against Hoover, Ruholl, Massey, Newkirk, Burley, and John Doe #1 for subjecting Plaintiff to unconstitutional conditions of confinement for allowing him to lie on the floor in a feces-filled diaper and rolling him into urine on September 24, 2024.

6

Count 5:      Eighth Amendment excessive force and deliberate indifference to medical needs claims against John Doe #1 for handcuffing Plaintiff and painfully lifting him by his arms on September 24, 2024, and against Britton, Burley, Ruholl, and Hoover for failing to intervene.

Count 6:      Eighth Amendment claim for cruel and unusual punishment/excessive force/sexual assault against John Doe #1, Britton, Burley, Ruholl, and Hoover, for wiping Plaintiff's anal area and scrotum with a caustic substance and slapping his buttocks, and/or failing to intervene on September 24, 2024.

Count 7:      Eighth Amendment excessive force/sexual assault claim against Wilson for intentionally stepping on Plaintiff's genitals on September 30, 2024, and against Britton, Hoover, Ellison, and Burley for failing to intervene.

Count 8:      Eighth Amendment excessive force claim against White for throwing Plaintiff to the floor in the hospital on September 30, 2024.

Count 9:      Eighth Amendment excessive force claim against Burley and Johnson for grabbing Plaintiff by the throat and striking him on October 15, 2024 and against Wall for failing to intervene.

Count 10:     Eighth Amendment deliberate indifference to serious medical needs claim against Burley, Johnson, Brown, Hoover, Wall, and John Does #2, #3, and #4 for refusing Plaintiff medical attention for his injuries or other needs and refusing to change his diaper on October 15, 2024.

Count 11:     Eighth Amendment claim against Burley, Johnson, Brown, Hoover, Wall, and John Does #2, #3, and #4 for subjecting Plaintiff to unconstitutional conditions of confinement for allowing him to sit for hours in a feces-filled diaper on October 15, 2024.

Count 12:     Eighth Amendment deliberate indifference to serious medical needs claims against Ruholl and Hoover for denying Plaintiff water and allowing his urinal to overflow on October 16, 2024; against Hoover and Burley for denying water and refusing to help Plaintiff into his wheelchair or change his feces-filled diaper on October 24, 2024; and against Hoover for refusing to help Plaintiff to his wheelchair on October 25, 2024.

Count 13:     Eighth Amendment claim against Ruholl, Hoover, and Burley for subjecting Plaintiff to unconstitutional conditions of confinement for denials of water, allowing Plaintiff's urinal to overflow, and

7

leaving Plaintiff lying in a feces-filled diaper on the dates listed in Count 12 from October 16-25, 2024.

Count 14: Eighth Amendment claims for incidents on December 23, 2024: (A) excessive force claim against Navarette and Kirkwood for cuffing, shackling, and hanging Plaintiff by his arms and against Carmarillo for failure to intervene; (B) excessive force claim against Navarette, Kirkwood, and Livingston for bending Plaintiff's left thumb and slamming him into a strap wheelchair and against Kelsey, White, and Ballard for failure to intervene; (C) excessive force/sexual assault claim against Livingston, Navarette, Kelsey, White, Ballard, and Bowker for striking Plaintiff in his groin, stomach, back, and head, removing his clothes, and inserting an object into his anus, and/or failure to intervene to stop those actions; and (D) claims against Navarette, Kirkwood, Livingston, Kelsey, White, Ballard, and Bowker for deliberate indifference to the medical needs resulting from these actions.

Count 15: Eighth Amendment deliberate indifference to serious medical needs and excessive force claims against Livingston and Hoover for refusing to use the Hoyer lift to transfer Plaintiff and slamming him onto the bed on December 24, 2024.

Count 16: State law battery claim against John Doe #1, Britton, Burley, Ruholl, Hoover, Wilson, White, Johnson, Navarette, Kirkwood, Livingston, Kelsey, Ballard, and Bowker for the actions described in Counts 5, 6, 7, 8, 9, 14, and 15.

Count 17: First Amendment retaliation claim against all defendants for the actions described in Counts 1-16.

Count 18: Claims for conspiracy and official misconduct based on the incidents described in Counts 1-17.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

8

**Preliminary Dismissals**

Defendants Gonzalez and Castellanos will be dismissed from the action without prejudice. Plaintiff describes them as Internal Affairs officers who interviewed him on September 24 and 25, 2024 about the incidents described in Counts 3-6, and prepared documents onto which they placed his fingerprints. The mishandling of or failure/refusal to investigate a prisoner's complaints or grievances by a person who did not participate in the underlying conduct does not create liability under § 1983. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Watson v. Dodd*, No. 16-CV-1217-NJR, 2017 WL 120951, at *6 (S.D. Ill. Jan. 12, 2017). Further, Plaintiff does not describe any adverse consequences that resulted from the documents these individuals prepared.

**Discussion**

**Count 1**

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts suggesting (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* An objectively serious condition includes a condition that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

Plaintiff's allegations are sufficient to state a claim for deliberate indifference in Count 1 against Britton, Brown, Ellison, and Hoover for their refusal to get him off the floor and change

his soiled diaper on September 11, 2024.

## Count 2

Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). To state an Eighth Amendment claim for unconstitutional conditions of confinement, a plaintiff must plead facts suggesting he was denied "the minimal civilized measure of life's necessities," amounting to a serious deprivation of basic human needs that created an excessive risk to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Rhodes*, 452 U.S. at 347. A prisoner must also sufficiently allege that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842.

Plaintiff describes several instances that defendants refused to change his diaper and allowed him to lie or sit in his own feces for extended periods of time. These allegations are sufficient to state claims for subjecting Plaintiff to unconstitutional conditions of confinement in violation of the Eighth Amendment. Count 2 will proceed against Britton, Brown, Ellison, and Hoover for leaving Plaintiff on the floor in a feces-filled diaper on September 11, 2024.

## Counts 3 and 4

Plaintiff sufficiently alleges Eighth Amendment claims for deliberate indifference to his medical needs and for unconstitutional conditions of confinement for the events occurring on September 24, 2024. He claims Hoover, Ruholl, Massey, Newkirk, Burley, and John Doe #1 refused to get him up from the floor or change his diaper, leaving him lying in feces and urine, then later rolled him face down into urine. Therefore, Counts 3 and 4 will proceed against these defendants.

**Count 5**

"Correctional officers violate the Eighth Amendment when they use force not in a good faith effort to maintain or restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). Additionally, failure to intervene when another officer abuses a prisoner can be the basis for a constitutional violation under the Eighth Amendment. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). To state such a claim, a plaintiff must sufficiently allege a defendant (1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). And a guard who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]" *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996).

Plaintiff sufficiently alleges an excessive force claim and a claim for deliberate indifference to medical needs against John Doe #1 for inflicting pain on him with handcuffs and lifting him by his arms while cuffed on September 24, 2024. Plaintiff's allegations also support claims against Britton, Burley, Ruholl, and Hoover for failing to intervene in John Doe #1's use of force. Therefore, Count 5 will proceed against John Doe #1, Britton, Burley, Ruholl, and Hoover.

**Count 6**

The Eighth Amendment prohibition against cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *See Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). (See authority in Count 2 above). An excessive force claim typically involves "rough or otherwise improper handling that causes excessive pain or other harm." *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012). (See Count 5 above). "An unwanted touching of a person's private parts,

11

intended to humiliate the victim or gratify the assailant's sexual desires, can [also] violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant." *Id.* at 643 (citing *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009).

Plaintiff's allegations state viable claims in Count 6 for cruel and unusual punishment and excessive force/sexual assault in violation of the Eighth Amendment against John Doe #1, Britton, Burley, Ruholl, and Hoover for wiping a caustic substance Plaintiff's anal area and private parts and slapping his buttocks on September 24, 2024, and/or failing to intervene to stop the individual(s) who took those actions.

**Count 7**

Plaintiff's allegations support the excessive force/sexual assault claim against Wilson for stepping on Plaintiff's genitals, and against Britton, Hoover, Ellison, and Burley for failing to intervene, on September 30, 2024.  Therefore, Count 7 will proceed against these defendants.

**Counts 8 and 9**

Plaintiff's allegations against White for throwing him to the floor on September 30, 2024 are sufficient to state an excessive force claim in Count 8.  Likewise, Plaintiff has sufficiently stated an excessive force claim against Burley and Johnson for allegedly grabbing and striking him on October 15, 2024, and against Wall for allegedly failing to intervene to stop Burley and Johnson.  Count 9 will proceed against Burley, Johnson, and Wall.

**Count 10**

Plaintiff's allegations support an Eighth Amendment claim for deliberate indifference to serious medical needs against Burley, Johnson, Brown, Hoover, Wall, and John Does #2, #3, and #4 for refusing his request for medical attention after the alleged attack by Burley and Johnson (see Count 9) and refusing to change his diaper on October 15, 2024.  Therefore, Count 10 will

proceed against Burley, Johnson, Brown, Hoover, Wall, and John Does #2, #3, and #4.

### Count 11

Plaintiff's allegation that Burley, Johnson, Brown, Hoover, Wall, and John Does #2, #3, and #4 allowed him to remain sitting in his feces-filled diaper for hours on October 15, 2024 states a colorable claim that they held him under unconstitutional conditions of confinement in violation of the Eighth Amendment.  Therefore, Count 11 will proceed against Burley, Johnson, Brown, Hoover, Wall, and John Does #2, #3, and #4.

### Count 12

Ruholl and Hoover's alleged denial of Plaintiff's requests for water and to empty his overflowing urinal on October 16, 2024 states a viable claim for deliberate indifference to serious medical needs.  The same is true for Plaintiff's allegations that Hoover and Burley refused to give him water, help him into his wheelchair, or change his feces-soiled diaper on October 24, 2024, and that Hoover refused to move him to his wheelchair on October 25, 2024.  Therefore, Count 12 will proceed against Ruholl, Hoover, and Burley.

### Count 13

Plaintiff's allegations regarding the denial of water on October 16 and October 24, 2024, allowing his urinal to overflow on October 16, 2024, and allowing him to remain in a feces-filled diaper on October 25, 2024, also support the claim that he was subjected to unconstitutional conditions of confinement on those dates.  Accordingly, this claim will proceed in Count 13 against Ruholl, Hoover, and Burley.

### Count 14

Plaintiff's allegations  describing the events of December 23, 2024 state the following claims: (A) excessive force claim against Navarette and Kirkwood for cuffing, shackling, and

13

hanging Plaintiff by his arms and against Carmarillo for failure to intervene in that alleged misconduct; (B) excessive force claim against Navarette, Kirkwood, and Livingston for bending Plaintiff's left thumb and slamming him into a strap wheelchair and against Kelsey, White, and Ballard for failure to intervene in that alleged misconduct; (C) excessive force/sexual assault claim against Livingston, Navarette, Kelsey, White, Ballard, and Bowker for striking Plaintiff in his groin, stomach, back, and head, removing his clothes, and inserting an object into his anus, and/or failure to intervene to stop those alleged actions, and (D) claims against Navarette, Kirkwood, Livingston, Kelsey, White, Ballard, and Bowker for deliberate indifference claim to the medical needs resulting from their alleged acts of excessive force against Plaintiff.

Accordingly, Count 14 will proceed against Navarette, Kirkwood, Carmarillo, Livingston, Kelsey, White, Ballard, and Bowker.

### Count 15

Plaintiff's allegations support excessive force and deliberate indifference to medical needs claims arising on December 24, 2024 against Livingston and Hoover for allegedly refusing to use the Hoyer lift to transfer Plaintiff and slamming him onto the cell bed.  Count 15 will proceed against Livingston and Hoover.

### Count 16

Plaintiff's state law tort claims for battery are based on the same facts that support the excessive force claims in Counts 5, 6, 7, 8, 9, and 14.  *See Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008) (federal court has supplemental jurisdiction over related state law claims that "derive from a common nucleus of operative fact"); *see, e.g., Shea v. Winnebago Cty. Sheriff's Dep't*, 746 F. App'x 541, 547-48 (7th Cir. 2018) (discussing assault and battery under Illinois law).  Count 16 will therefore proceed against John Doe #1, Britton, Burley, Ruholl,

14

Hoover, Wilson, White, Johnson, Navarette, Kirkwood, Livingston, Kelsey, Ballard, and Bowker for their alleged actions described in Counts 5, 6, 7, 8, 9, 14, and 15.

### Count 17

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Here, Plaintiff claims he lodged complaints and/or grievances against all defendants named in the above-referenced counts and his complaints prompted their alleged misconduct and abuse directed toward him. As such, Plaintiff has sufficiently pleaded a retaliation claim against Livingston, Navarette, Kirkwood, Burley, Wilson, Johnson, Britton, Massey, Newkirk, Wall, Bowker, Kelsey, Ballard, White, Hoover, Ruholl, Brown, Ellison, the John Does #1-4, and Carmarillo, which will proceed in Count 17.

However, Nothnagle (Administrative Review Board) and Hughes (IDOC Director) will be dismissed from this claim and from the case because Plaintiff does not include any factual allegations indicating these defendants were personally involved in the misconduct alleged in Counts 1-17. Nothnagle and Hughes cannot be held liable under § 1983 absent personal responsibility for the alleged constitutional violations. *See Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021); *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017).

### Count 18

Plaintiff's civil conspiracy and official misconduct claims cannot proceed under 42 U.S.C.

§ 1985(3) or the Illinois statutes he references.  The Complaint includes conclusory statements that a conspiracy existed to violate Plaintiff's Eighth Amendment rights and to commit official misconduct, but lacks supporting factual allegations.  While official misconduct by a public officer is a crime in Illinois, a violation of state law does not amount to a federal constitutional claim under § 1983. *See Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989).  Count 18 will therefore be dismissed for failure to state a claim upon which relief may be granted.

### Unknown/John/Jane Doe Defendants

Plaintiff is responsible for securing information aimed at identifying the John Doe Tact Team Defendants #1-4, in accordance with the John/Jane Doe Identification Order that will be entered separately.  Once the names of the unknown defendants are obtained, Plaintiff must file a motion to substitute the newly identified defendants in place of the generic designations in the case caption and throughout the Complaint.  The Warden of Lawrence Correctional Center, in his/her official capacity only, will be added as a defendant for the purpose of responding to Plaintiff's requests for information regarding the identity of the Unknown Defendants.

### Pending Motion

Plaintiff's Motion for Counsel (Doc. 3) is **DENIED.**  There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010).  In determining whether to recruit counsel, the Court considers whether the *pro se* party has made reasonable efforts to secure counsel on his own and his ability to litigate the case on his own. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Here, Plaintiff has not established any efforts to obtain counsel on his own; he merely notes that counsel was recruited for him in previous cases and he is seriously mentally ill.  Moreover, at

16

this early stage of the litigation, it is difficult to accurately evaluate the need for assistance of counsel, so recruitment of counsel would be premature. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel...cannot be gauged.").

Should Plaintiff encounter difficulties in self-representation as this case proceeds, he may refile his motion seeking recruitment of counsel.  If he renews his request, he should submit at least 3 rejection letters from attorneys to show that he has made reasonable efforts to obtain counsel on his own.

## Disposition

The Clerk is **DIRECTED** to correct the spelling of Defendant Nacarette's name to "Navarette."

The Complaint states colorable claims against Livingston, Navarette, Kirkwood, Burley, Wilson, Johnson, Britton, Massey, Newkirk, Wall, Bowker, Kelsey, Ballard, White, Hoover, Ruholl, Brown, Ellison, John Does #1-4, and Carmarillo, in one or more of Counts 1-17 as set forth above.  Count 18 and Defendants Gonzalez, Castellenos, Nothnagle, and Hughes are **DISMISSED** without prejudice.  The Clerk of Court is **DIRECTED** to **ADD** the Warden of Lawrence Correctional Center, in his or her official capacity, to the docket for purposes of identification of the John Doe Defendants.

The Clerk shall prepare for Lt. Livingston, Sgt. Navarette, C/O Kirkwood, Lt. Burley, Sgt. Wilson, Sgt. Johnson, C/O Britton, C/O Massey, C/O Newkirk, C/O Wall, Sgt. Bowker, Lt. Kelsey, C/O Ballard, C/O White, CNA Hoover, Nurse Ruholl, Nurse Brown, Nurse Ellison, Carmarillo, and the Warden of Lawrence Correctional Center (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of

17

Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**. The Warden of Lawrence Correctional Center need only appear in this matter and need not answer the Complaint.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a

delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  June 8, 2026**

_____
**STACI M. YANDLE**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.